IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR GLASGOW | : | CIVIL ACTION |
|         Petitioner | : | |
|   v. | : | |
| | : | |
| JEROME WALSH, et al. | : | |
|         Respondents | : | No. 11-3155 |

**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                                               December 18, 2013

Presently before me is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Omar Glasgow.  Glasgow, who is currently incarcerated in the Lackawanna County Prison in Scranton, Pennsylvania, challenges his judgment of sentence for third-degree murder and various offenses.  For the reasons that follow, the petition will be denied.

**I.**     **FACTS AND PROCEDURAL HISTORY**:

The state court summarized the facts leading to Glasgow's arrest as follows:

> On the afternoon of January 26, 2001, . . . Glasgow, in concert with two others, entered the apartment of . . . Anthony Randall to collect an alleged debt of $1500.  When Mr. Randall was unable to produce the requested funds, he was severely beaten with a fire extinguisher, a chair, and other domestic articles appropriated from [Randall's] dwelling unit by . . . Glasgow and his associates.
>
> On the same day, decedent, Reginald Smith, was outside with his partner, Yvette Mitchell . . . Ms. Mitchell testified that at approximately 3:30PM . . . Glasgow, in the company of two others, parked his vehicle near where Mr. Smith and Ms. Mitchell were standing and approached Mr. Smith.  An altercation developed.  Both Mr. Smith and Ms. Mitchell

> attempted to flee the immediate area, but were pursued by . . . Glasgow and one other offender. After successfully apprehending Mr. Smith . . . Glasgow and his conspirator repeatedly struck Mr. Smith on the head, rendering him unconscious, and continued beating him for three to four minutes. [Mr. Smith] was subsequently hospitalized and remained unconscious until his death on August 10, 2001.
>
> After the quarrel between the group, which included defendant Glasgow, and Mr. Smith . . . Glasgow briefly left the scene, returned a few moments later, and fired six to eight shots into an open, populated street. A third complainant, Mark Thornton, was present and believes he was grazed by one of the bullets fired by . . . Glasgow.

Commonwealth v. Glasgow, No. 0046 1/1 Dec. Term 2001, at 2-3 (Phila. Ct. Com. Pl. July 27, 2005). After a jury trial in the Philadelphia Court of Common Pleas, Glasgow was found guilty of third-degree murder, criminal conspiracy and two counts of aggravated assault. On July 19, 2005, he was sentenced to an aggregate term of 35 to 75 years of imprisonment.

Glasgow filed a direct appeal in the Superior Court arguing that:

> 1) the trial court erred in dismissing a juror who assured the court and counsel that she could be fair; and
>
> 2) the evidence was insufficient to support the verdicts of guilt beyond a reasonable doubt.

His judgment of sentence was affirmed on October 12, 2006. Commonwealth v. Glasgow, No. 2294 EDA 2005 (Pa. Super. Oct. 12, 2006) (unpublished memorandum). Glasgow did not petition for allowance of appeal in the Pennsylvania Supreme Court.

Glasgow filed a timely pro se petition under Pennsylvania's Post Conviction Relief

Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq.  Appointed counsel filed an amended PCRA petition.  The PCRA court dismissed Glasgow's petition on January 8, 2008.  Upon PCRA review, the Pennsylvania Superior Court characterized Glasgow's four (4) claims as follows:

> 1) the PCRA court erred in dismissing his PCRA petition without a hearing because prior counsel rendered ineffective assistance of counsel;
>
> 2) trial counsel was ineffective for failing to request a mistrial after co-defendant Gerald Taylor elected to plead guilty following the selection of the jury and the commencement of the presentation of testimony;
>
> 3) initial PCRA counsel was ineffective for failing to file an amended PCRA petition presenting the issue of trial counsel's ineffectiveness for stipulating to the unavailability of two crucial Commonwealth witnesses and that a full and fair opportunity to cross-examine the witnesses was had at the preliminary hearing, allowing the Commonwealth to read the witnesses' preliminary hearing testimony into the record; and
>
> 4) initial PCRA counsel was ineffective for failing to file an amended PCRA petition raising the issue of trial counsel's ineffectiveness for failing to file a post-sentence motion for reconsideration of sentence since the sentence imposed by the trial court is excessive and not reflective of Glasgow's character, history, and condition.

The Pennsylvania Superior Court affirmed the denial of PCRA relief on February 4, 2009.  Commonwealth v. Glasgow, No. 360 EDA 2008 (Pa. Super. Feb. 4, 2009).  The Pennsylvania Supreme Court denied Glasgow's petition for allowance of appeal on September 14, 2010.  Commonwealth v. Glasgow, 8 A.3d 342 (Pa. Sept. 14, 2010).

3

Glasgow then filed this timely petition for a federal writ of habeas corpus claiming:

> 1) a structural error occurred at trial when Glasgow's co-defendant pleaded guilty after the jury was empaneled;
>
> 2) trial counsel was ineffective for failing to request a mistrial when Glasgow's co-defendant pleaded guilty after the jury was empaneled;
>
> 3) trial counsel was ineffective for stipulating to the admissibility of preliminary hearing testimony due to the unavailability of the assault victim as a witness; and
>
> 4) he was denied meaningful access to the courts and constructively denied his constitutional right to effective assistance of counsel when the evidence was insufficient to support his convictions.

Respondents have filed an answer to Glasgow's habeas petition asserting that Glasgow is not entitled to federal habeas relief because his claims are procedurally defaulted and/or meritless.

## II.    DISCUSSION:

### A.    Legal Standards

#### 1.    Exhaustion and Procedural Default

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.  "The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see

4

also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)).  A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process.  Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004); see also Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the state court as will be employed by the federal court").  The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

Although exhaustion may be excused, federal courts may nonetheless be precluded from reviewing the merits of claims deemed exhausted.  As the Third Circuit has held:

> claims deemed exhausted because of a state procedural bar are
> procedurally defaulted, and federal courts may not consider
> their merits unless the petitioner "establishes 'cause and prejudice'
> or a 'fundamental miscarriage of justice' to excuse the default."

Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991).  The "cause and prejudice" standard applies whether the default in question occurred at trial, on appeal, or on state collateral attack.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of

justice. Coleman, 501 U.S. at 748. In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496). To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327.

### 2.     Standard for Claims Reviewed on the Merits

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing § 2254(e)(1)).

B.  **Claims**

1.  **Structural Error for Failing to Declare a Mistrial When Co-Defendant Pled Guilty**

In his first claim, Glasgow argues that a "structural error" occurred when the court allowed his trial to proceed after the jury had been empaneled and his co-defendant decided to plead guilty. A structural defect affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Id. (quotation omitted). Glasgow alleges that his "right to pick a jury of his peers" was abrogated when he was forced to proceed with a jury not of own choosing because Pennsylvania Rule of Criminal Procedure 634(B) required that he and his co-defendant split seven peremptory challenges.

First, I find that this claim was not fairly presented to the state courts.[1] Moreover,

---

[1] Glasgow presented this claim to the PCRA court as a claim of ineffective assistance of counsel. Because, however, the structural error claim presented here employs a different method of legal analysis than the ineffective assistance of counsel claim presented to the state court (addressed as claim 2, infra), Glasgow's structural error claim was not "fairly presented" to the state courts and is therefore, unexhausted. See Villot, 373 F.3d at 337; Evans, 959 F.2d at 1231. The only way in which Glasgow could present this claim in the state court at this time is by filing a second PCRA petition. See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations. Glasgow is considered to have procedurally defaulted his claim even though state procedural rules bar him from seeking further relief in state courts. Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001). Since he has not provided this court with an explanation for his failure to properly present this

7

it is without merit.

Although Glasgow is entitled to a fair trial before an impartial jury, the Supreme Court "has consistently held that there is no freestanding constitutional right to peremptory challenges." Rivera v. Illinois, 556 U.S. 148, 157. "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." Id. at 158. Here, Glasgow does not allege that the trial court "deliberately misapplied the law or acted in an arbitrary or irrational manner." Id. at 160. Moreover, he does not provide any evidence which demonstrates that he did not have an impartial jury. See United States v. Martinez–Salazar, 528 U.S. 304, 315–17 (2000) (finding no due process violation where the defendant was required to use a peremptory challenge to remove a juror that the trial court should have removed for cause because the defendant received an impartial jury, which is all the Constitution mandates). Glasgow has not even asserted that there are jurors he might have retained that his co-defendant struck or jurors that he might have struck if he had more challenges. As a result, I conclude there is no merit to his allegation that the trial court violated his constitutional right by allowing his trial to proceed after his co-defendant pleaded guilty. This claim is denied.

---

claim to the state courts, Glasgow has not shown cause to excuse his procedural default. Carrier, 477 U.S. at 488. Moreover, Glasgow makes no colorable showing of innocence; therefore, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed. Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496).

### 2. Trial Counsel was Ineffective for Failing to Move for a Mistrial When Co-Defendant Pleaded Guilty

Glasgow also argues that trial counsel was ineffective for failing to move for a mistrial when his co-defendant pleaded guilty because his co-defendant had shared his peremptory challenges. Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. Thus, Glasgow is entitled to relief only if the Pennsylvania court's decision rejecting his claim of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law. Id.; see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Bell v. Cone, 535 U.S. 685, 698-699 (2002) ("It is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.").

In rejecting this claim, the Superior Court stated:

> There is no constitutional right to peremptory challenges . . . . Statutory limits on the number of peremptory challenges are not unconstitutional . . . . In a trial involving joint defendants, the defendants shall equally divide the number of peremptory challenges that would be afforded to the defendant charged with the highest graded offense. Pa.R.Crim.P. 634(B)(1). In this case, that number was seven. Pa.R.Crim.P. 634(A)(2). Accordingly, Glasgow and [his co-defendant] were each afforded four peremptory challenges. As the number of peremptory challenges conformed to the rule, Glasgow's trial counsel had no reasonable basis to request a mistrial when [Glasgow's co-defendant] pleaded guilty. Therefore, Glasgow's claim of ineffective assistance of counsel fails . . .

Commonwealth v. Glasgow, No. 360 EDA 2008, at 4-5 (Feb. 4, 2009) (case citations omitted).

I conclude that the state court's disposition of this matter did not result in a decision that was contrary to federal law, or involved an unreasonable application of, clearly established federal law. There was no basis upon which trial counsel reasonably

10

could have made a motion for a mistrial. Glasgow was given the correct number of peremptory strikes for a joint trial. The fact that his co-defendant ultimately pleaded guilty did not change the legality of the voir dire process. Moreover, as previously noted, Glasgow does not allege that the jurors chosen were incapable of impartiality. Thus, trial counsel would not have had a sound legal basis for moving for a mistrial and cannot be deemed ineffective for failing to do so.

In any event, Glasgow has failed to establish that he was prejudiced by counsel's alleged deficient performance. As previously stated, he does not attempt to dispute the competence or impartiality of the jury. Accordingly, Glasgow has failed to establish that he has suffered any prejudice through trial counsel's alleged deficient performance and fails to meet his burden to show that, but for counsel's error, the outcome would have been different. Strickland, 466 U.S. at 694. This claim is denied.

### 3. Trial Counsel was Ineffective for Stipulating to Admission of Preliminary Hearing Testimony

Glasgow contends that trial counsel was ineffective for failing to protect his Sixth Amendment right to confront witnesses at trial.[2] Glasgow bases his challenge on the fact that trial counsel stipulated to the unavailability of two Commonwealth witnesses, Anthony Randall and Mark Thornton. He argues that counsel improperly conceded that

---

[2] Although Respondents contend that the instant claim is unexhausted because it differs from the claim Glasgow presented on appeal in state court, I conclude that the claims are substantially equivalent and will proceed to review the claim on the merits. Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009) (claims raised in the state courts must be substantially equivalent to the claim pressed in the federal court).

there had been a full and fair opportunity to cross-examine these witnesses at the preliminary hearing.[3]  Glasgow also argues that the prosecution and trial counsel had allegedly reached an "informal agreement" to the stipulation prior to trial and that, in doing so, trial counsel essentially conceded Glasgow's guilt.[4]

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Supreme Court has recognized that the right of an accused to confront and cross-examine witnesses is essential to due process.  See Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  However, the Confrontation Clause does not bar testimonial

---

[3] Glasgow also argues that trial counsel was ineffective for stipulating to the admission of the preliminary hearing testimony because trial counsel had not personally conducted the cross-examination of the witnesses at Glasgow's preliminary hearing.  The direct and cross-examination of both Anthony Randall and Mark Thornton were read into evidence at Glasgow's trial.  (N.T. 5/26/05, at 41-94).  Glasgow has not provided any specific challenge regarding the adequacy of the preliminary hearing cross-examination.  In the absence thereof, this vague allegation must be dismissed.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991) (bald assertions and conclusory allegations do not provide sufficient ground for habeas relief, a petitioner must set forth facts to support his contention of a federal constitutional violation).

[4] This allegation is based upon the following exchange which occurred at the beginning of trial:
| | |
|---|---|
| THE COURT: | It is my understanding that you have had quite a bit of discussions about the unavailability of these two witnesses and that, to a certain extent, you are willing to stipulate to their unavailability; is that correct? |
| DEFENSE COUNSEL: | That is correct. |

(N.T. 5/26/05, at 30).

statements of a witness if he is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Ohio v. Roberts, 448 U.S. 56, 66 (1980). "[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25 (1968). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." Hardy v. Cross, _ U.S. _ , 132 S.Ct. 490, 494 (2011) (internal quotation marks omitted).

The relevant Pennsylvania statutory provision regarding the admission of an unavailable witness' prior testimony provides:

> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same critical issue. For the purpose of contradicting a witness the testimony given by him in another or in a former proceeding may be orally proved.

42 Pa. Con. Stat. Ann. § 5917.

Upon review of this claim, the state court concluded that:

> During the trial, it became apparent that Messrs. Randall and Thornton, two victims in the case against Glasgow, were not going to testify. Glasgow's trial counsel stipulated to the witnesses unavailability. N.T. Jury vol. 2, 5/26/2005, at 30. The Commonwealth then informed the trial court that both witnesses

were served with subpoenas to appear and that both witnesses were cooperative prior to trial. The Commonwealth stated that Mr. Randall indicated that he needed a ride to the courthouse. The Commonwealth arranged a ride but he failed to show. The Commonwealth contacted all known relatives and associates in order to locate Mr. Randall and obtained a bench warrant. Regarding Mr. Thornton, the Commonwealth attempted to have him brought to trial as he was in custody but he had been released prior to trial due to a failure to update a computer. The Commonwealth immediately obtained a bench warrant and contacted Mr. Thornton's family and associates in an attempt to find him. Additionally, the Commonwealth contacted local law enforcement, the FBI, and the local hospitals in an attempt to find Messrs. Randall and Thornton. The Commonwealth's actions were in vain as the witnesses actively failed to appear.

The Commonwealth also noted that Messrs. Randall and Thornton testified at Glasgow's preliminary hearing. At this hearing, Glasgow was represented by counsel, and counsel had an opportunity to cross-examine the witnesses.

Following this proffer, the trial court found the witnesses were unavailable and permitted the Commonwealth to read the prior preliminary hearing testimony of Messrs. Randall and Thornton in the Commonwealth's case-in-chief. As the trial court followed the mandate of § 5917 regarding witness unavailability, i.e., the witness was unavailable and the Commonwealth could not locate the witness after exercising due diligence and Glasgow had been afforded a full and fair opportunity for cross-examination . . ., we find that his trial counsel did not render ineffective assistance for not challenging the unavailability of Messrs. Randall and Thornton.

Commonwealth v. Glasgow, No. 360 EDA 2008, at 8-10 (Feb. 4, 2009).

The state court disposition of this claim was reasonable. As the state court noted, the prosecution set forth a detailed account of its diligent attempts to locate these witnesses and bring them to testify at trial. (N.T. 5/26/05, at 30-38). Moreover, there is no evidence that the defense was not provided with a full and fair opportunity to cross-

examine these witnesses at the preliminary hearing. (N.T. 5/26/05, 41-94). At the time of trial, counsel reasonably concluded that the Commonwealth had fulfilled its burden of establishing that these witnesses were "unavailable," and that both witnesses had been fully cross-examined at the preliminary hearing. Because there were no grounds to object to the admission of the preliminary hearing testimony, trial counsel's decision to stipulate to the admission of the preliminary testimony was based on sound judgment. See 28 U.S.C. § 2254(d); Strickland, 466 U.S. at 689. Accordingly, this claim is denied.

> 4. **State Law Precluded Meaningful Access to Courts**

In his last claim, Glasgow argues that the Pennsylvania Supreme Court decision in Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002), denied him "meaningful access to the courts," thereby violating his federal due process rights. In Grant, the Pennsylvania Supreme Court held that defendants should wait to present claims of ineffective assistance of trial counsel until collateral review. Essentially, Glasgow contends that, on direct appeal, counsel was prevented from arguing that if trial counsel had not stipulated to the admission of preliminary hearing testimony, then the evidence produced at trial would have been insufficient to sustain his conviction for third degree murder, conspiracy, and aggravated assault. He contends that delaying the presentation of his claim until collateral appeal "diminished" his claim because "his claim is now forced to be reviewed under the PCRA standard which is simply a cursory analysis to determine if the PCRA court ruling is free of legal error." See Pet'r Mem. of Law, at "D-3."

This claim was never presented to the state court. On direct appeal, counsel

presented a challenge to the sufficiency of the evidence for Glasgow's convictions for third degree murder, aggravated assault and criminal conspiracy.  However, the instant claim based on Grant, supra, differs from the sufficiency of the evidence claims presented on direct appeal.  See Evans, 959 F.2d at 1231 ("the same method of legal analysis must be available to the state court as will be employed by the federal court").  As a result, Glasgow's Grant claim is considered unexhausted.  See 28 U.S.C. § 2254(b)(1); Villot, 373 F.3d at 337.  Because Glasgow provides no explanation for his failure to present the instant Grant claim on appeal, it is procedurally defaulted.[5]  See Carrier, 477 U.S. at 488.  Consequently, this claim is denied.

### III.    CONCLUSION:

After close and objective review of the arguments and evidence, I conclude that Glasgow's petition for writ of habeas corpus is meritless.  Accordingly, Glasgow's petition will be denied.

Similarly, because Glasgow's claims are both legally and factually meritless, there

---

[5] To the extent that Glasgow argues that PCRA counsel was ineffective for failing to present this claim in his PCRA petition, I note that the Constitution does not dictate a standard for attorney effectiveness in a post-conviction, collateral attack.  Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  While the Supreme Court has recently held that certain deficiencies in representation on collateral appeal may provide the opportunity for habeas review in the context of procedural default, this case does not set forth the criteria to establish cause on these grounds because Martinez "does not extend to errors beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial review collateral proceeding may be deficient for other reasons."  See, e.g., Martinez v. Ryan, _ U.S _ , 132 S.Ct. 1309, 1315, 1319 (2012) ("[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for prisoner's procedural default of a claim of ineffective assistance at trial").  This is a claim of denial of access to courts -- not ineffective assistance of counsel.

is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.